# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CHESTER BROSS CONSTRUCTION COMPANY and CHARLES T. DOWELL, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ANNE L. SCHNEIDER, Secretary of Illinois Department of Transportation; ELLEN SCHANZLE-HASKINS, Chief Counsel of Illinois Department of Transportation; THOMAS R. WETZLER, Hearing Officer of Illinois Department of Transportation; BILL GRUNLOH, Chief Procurement Officer of Illinois Department of Transportation; and ILLINOIS DEPARTMENT OF TRANSPORTATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No.  12-3159 |
| Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This cause is before the Court on the Motion for Summary

Judgment filed by Defendants Illinois Department of Transportation

("IDOT"); Anne L. Schneider, Secretary of IDOT; Ellen Schanzle-

Haskins, Chief Counsel of IDOT; Thomas R. Wetzler, Hearing Officer of IDOT; and Bill Grunloh, Chief Procurement Officer of IDOT.  See d/e 10.  For the reasons described below, the Motion is GRANTED in part and DENIED in part.  The Court does not reach the merits of the case.

First, the Court finds that all of Plaintiffs' claims against IDOT are barred by the Eleventh Amendment.  Count IV of the complaint, a state-law claim, is barred by the Eleventh Amendment with respect to all Defendants.  However, Plaintiffs' remaining claims against Schneider, Schanzle-Haskins, Wetzler, and Grunloh are not barred by the Eleventh Amendment because the Ex parte Young exception applies.  See Ex parte Young, 209 U.S. 123, 28 S. Ct. 441 (1908).

Second, the Court finds that Younger abstention is appropriate with respect to the remaining claims.  See Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746 (1971).  Therefore, this Court abstains from exercising jurisdiction over this case.  Plaintiffs' entire complaint is DISMISSED without prejudice.  The remainder of Defendants' Motion for Summary Judgment is DENIED AS MOOT.

# I.  BACKGROUND

A.    <u>Facts</u>

On summary judgment, this Court considers the facts in the light most favorable to the plaintiff.  <u>Valance v. Wisel</u>, 110 F.3d 1269, 1276 (7th Cir. 1997).  Accordingly, the facts, taken in the light most favorable to Plaintiffs, are as follows.

Plaintiff Chester Bross Construction Company ("Chester Bross") is a general construction contractor, with its principal place of business in Palmyra, Missouri, that bids on IDOT construction projects.  Chester Bross employs individuals who live and primarily work out of an office in Missouri.  Plaintiff Charles T. Dowell ("Dowell") is a citizen of Missouri and is a construction worker who has been employed by Chester Bross for several years.

Contractors that bid on IDOT construction projects are subject to Section 30-22 of the Illinois Procurement Code, commonly called the "Responsible Bidder" provision, which provides, among other things, that (1) "The bidder and all bidder's subcontractors must participate in

applicable apprenticeship and training programs approved and registered with the United States Department of Labor's Bureau of Apprenticeship and Training" (Section 30-22(6)); and (2) "The bidder must submit a signed affidavit stating that the bidder will maintain an Illinois office as the primary place of employment for persons employed in the construction authorized by the contract" (Section 30-22(8)).  See 30 ILCS 500/30-22(6), (8).

In June 2010, after Chester Bross had submitted the lowest bid for an IDOT construction project, the Laborers' International Union of North America and the International Union of Operating Engineers filed bid protests with IDOT against Chester Bross, protesting Chester Bross' award eligibility.  The bid protests contended that Chester Bross (1) used the trades of "Laborer" and "Operating Engineer" on its IDOT construction projects without participating in approved apprenticeship and training programs applicable to those trades, as required by the Illinois Procurement Code, Section 30-22(6).  On July 2, 2010, Chester Bross submitted information to IDOT denying the allegations and

representing that Chester Bross would not be using laborers on the protested projects and that Chester Bross had access to the appropriate apprenticeship and training programs.  IDOT then denied the bid protests.

Thereafter, Defendant Schanzle-Haskins, IDOT's Chief Counsel, initiated an audit to verify Chester Bross' representations in response to the June 2010 bid protests.  On May 17, 2011, the audit concluded that Chester Bross' certified records for the payroll date ending August 28, 2010 listed some employees as laborers that were paid the laborer's prevailing wage rate for work on an IDOT project.

On June 8, 2011, IDOT issued a Notice of Suspension and Interim Suspension to Chester Bross.  The notice temporarily suspended Chester Bross from bidding on IDOT construction projects because, despite having been the lowest bidder on five IDOT projects, Chester Bross: (1) had failed to certify in its bid documents that it complied with the required apprenticeship programs; (2) had failed to disclose in its bid documents that it intended to use a laborer for the construction projects;

(3) in its July 2, 2010 response to bid protests, had misrepresented that Chester Bross did not use any laborers on the construction projects; and (4) had used a laborer in certain construction projects. The notice stated that an immediate suspension was necessary to safeguard the public's interest in the responsible letting of construction projects. On August 2, 2011, an Amended Notice of Suspension was issued.

Between August 25, 2011 and October 14, 2011, IDOT held seven days of hearings regarding Chester Bross' suspension. After the hearings concluded, the parties filed post-hearing briefs, the last of which was submitted on January 30, 2012.

On January 25, 2012, Chester Bross served a motion to dismiss claims or to reopen the hearing. The motion was denied on February 14, 2012. On the same day, Chester Bross served a motion to reconsider, which was denied on June 15, 2012.

On June 15, 2012, Defendant Wetzler, the hearing officer presiding over Chester Bross' case, issued his "Findings and Recommendations to the Chief Procurement Officer." See Defs.' Mem. Supp. Summ. J. (Ex.

A).  Wetzler found, among other things, that Chester Bross (1) altered a document, (2) "knowingly and purposefully misclassified employees on state projects," (3) violated the Illinois Procurement Code's apprenticeship requirement (30 ILCS 500/30-22(6)), (4) made a material misrepresentation of fact to IDOT and perpetrated a fraud on IDOT by stating that it would not use the trade of laborer on particular projects when it did in fact use laborers, and (5) made material misrepresentations regarding whether it met the apprenticeship requirements of the Illinois Procurement Code.  <u>See</u> Defs.' Mem. Supp. Summ. J. (Ex. A).

Wetzler recommended that Chester Bross be suspended from bidding on IDOT construction projects for five years, effective June 8, 2011.  The recommendation was sent to IDOT's Chief Procurement Officer, Defendant Grunloh.

Chester Bross then requested and received leave to submit written exceptions to Wetzler's "Findings and Recommendations" by July 2, 2012.  These exceptions are attached to Defendants' Reply.  Defendants

state in their Motion for Summary Judgment that a decision from Chief

Procurement Officer Grunloh was expected to be issued by July 9, 2012.[1]

The parties agree that the next IDOT letting for which Chester Bross

would qualify is scheduled for August 3, 2012.

B.    Procedural Background

On June 12, 2012, Chester Bross and its employee, Dowell, filed

this action.  The four-count complaint seeks declaratory and injunctive

relief.[2]  In Count I, Plaintiffs claim that Section 30-22(6) of the Illinois

Procurement Code, 30 ILCS 500/30-22(6), which mandates that all

contractors and subcontractors maintain and participate in an

apprenticeship program approved by and registered with the United

States Department of Labor's Bureau of Apprenticeship and Training, is

preempted by the Employee Retirement Income Security Act (ERISA),

---

[1] The Parties have not informed the Court whether the Chief Procurement Officer's decision has been issued.  However, the status and outcome of that decision has no effect on this Court's ruling on Defendants' Motion for Summary Judgment.

[2] Each count of the Complaint begins with a subheading stating "declaratory relief" and makes no mention of injunctive relief.  However, Plaintiffs request injunctive and declaratory relief on pages 1-2 of the Complaint and in the "Prayers for Relief" section on page 15 of the Complaint.  This Court first describes the claims stated in each count and then describes the injunctive relief and declaratory relief sought.

29 U.S.C. § 1144(a).  In Count II, Plaintiffs claim that IDOT's administrative rules governing the interim suspension and continuing suspension proceedings against Chester Bross violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution and/or the Illinois Constitution[3] because (a) the interim suspension was issued without a right to a hearing, (b) the rules do not provide assurance that a post-suspension hearing will be concluded promptly, and (c) the rules do not authorize the hearing officer to subpoena witnesses.  In Count III, Plaintiffs claim that Section 30-22(8) of the Illinois Procurement Code violates the Privileges and Immunities Clause and Commerce Clause of the United States Constitution because Section 30-22(8) unlawfully discriminates against individuals employed out-of-state and against contractors that do not use individuals employed

---

[3] Plaintiffs do not explicitly specify in Count II whether they claim a violation of federal or state due process or both.  However, Plaintiffs refer to both federal and state due process elsewhere in the complaint. For example, on page 16 of the Complaint, Plaintiffs seek an order declaring that IDOT's interim suspension rules are in "violation of the Due Process Clause of the United States Constitution and/or as a violation of the Illinois Constitution."  On page 3 of the Complaint, Plaintiffs state that IDOT's interim suspension against Chester Bross is a "violation of the Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Constitution of Illinois."

in Illinois.  Finally, in Count IV, Plaintiffs allege that because the Illinois Procurement Code states that it does not apply to local governments, IDOT lacks authority to enforce the apprenticeship and training requirements of the Illinois Procurement Code in the county bid process.

Plaintiffs seek an order: (1) enjoining IDOT officials from enforcing Sections 30-22(6) and (8) of the Illinois Procurement Code or incorporating those requirements into the bid process for future public projects; (2) enjoining IDOT officials from maintaining the interim suspension of Chester Bross; (3) enjoining IDOT officials from continuing suspension proceedings against Chester Bross; and (4) ordering IDOT officials to re-bid the "Piper Lane Reconstruction Project"[4] ("Piper Project") without applying the unlawful provisions of the Illinois Procurement Code.

Additionally, Plaintiffs seek an order declaring the following: (1) Sections 30-22(6) (apprenticeship requirement) of the Illinois

---

[4] The Piper Lane Reconstruction Project is an IDOT project that was scheduled to open for bidding beginning on June 12, 2012 at 2:00 p.m.  Plaintiffs filed the Complaint in this case on June 12, 2012 at 12:27 p.m.

Procurement Code is preempted by ERISA and is therefore invalid; (2)

Sections 30-22(8) (residency requirement) of the Illinois Procurement

Code is unconstitutional as a violation of the Privileges and Immunities

Clause and Commerce Clause of the United States Constitution and/or

the Illinois Constitution; (3) IDOT's amended suspension and interim

suspension of Chester Bross are unlawful; (4) IDOT's rules governing

interim suspension are unconstitutional as a violation of the Due Process

Clause of the United States Constitution and/or the Illinois Constitution;

and (5) IDOT exceeded its authority by requiring local units of

government to comply with the apprenticeship requirement of the Illinois

Procurement Code.

On June 13, 2012, Chester Bross and Dowell filed a Motion for

Temporary Restraining Order ("TRO motion"). <u>See</u> d/e 3. On June 20,

2012, Defendants filed "objections" to the TRO motion, arguing that no

emergency existed, that this Court lacks subject-matter jurisdiction, and

that Plaintiffs have no likelihood of success on the merits. On June 21,

2012, Plaintiffs requested that the hearing on the TRO motion be

converted to a telephone conference to set a briefing schedule.

At the June 21, 2012 telephone conference, the parties agreed that, prior to the Court's consideration of Plaintiffs' TRO Motion, Defendant would file a motion to dismiss and Plaintiffs would file a response, on an expedited schedule.  On June 25, 2012, Defendants filed their Motion for Summary Judgment.[5]  Plaintiffs filed a Response to Defendants' Motion on June 28, 2012.  See d/e 13.  Defendants filed a Reply on July 3, 2012. See d/e 15.

In the Motion, Defendants argue that summary judgment should be granted on Count I because the Illinois Procurement Code's apprenticeship requirement is not preempted by ERISA.  Additionally, Defendants argue the entire complaint should be dismissed for the

_____

[5] In the Motion for Summary Judgment, Defendants explain that although Defendants anticipated filing a motion to dismiss, Defendants filed their motion as a Motion for Summary Judgment because the motion references matters outside of the pleadings.  Under Federal Rule of Civil Procedure 12(d), a motion to dismiss referencing matters outside the pleadings "must be treated as one for summary judgment under Rule 56."  See Fed. R. Civ. P. 12(d).  Defendants' Motion includes the following attachments: an affidavit of Wetzler; a document entitled "Findings and Recommendations to the Chief Procurement Officer" prepared by Wetzler; an affidavit of Grunloh; a June 18, 2012 letter from Grunloh to Plaintiffs' attorney; a copy of IDOT's 2012-13 Letting Schedule; a copy of Graves v. State of Ill. Dept. of Children & Family Servs., 2011 WL 719076 (N.D. Ill. Feb. 22, 2011).

following reasons: (1) the entire action is barred by the Eleventh Amendment; (2) the Court should abstain from hearing the entire action based on <u>Younger</u> abstention; (3) Plaintiffs have failed to exhaust administrative remedies; (4) Plaintiffs have failed to state a claim against any of the state officials; and (5) Plaintiffs lack standing to pursue Count III; (6) Plaintiffs lack standing to pursue Count IV because they are not a local government entity.

On June 29, 2012, this Court held a hearing on Defendants' Motion for Summary Judgment and took the Motion under advisement. The Court also granted Plaintiffs' oral motion to convert the TRO motion to a Motion for Preliminary Injunction.  <u>See</u> Minute Entry of June 29, 2012.

## II. JURISDICTION AND VENUE

This Court has subject-matter jurisdiction in this case because Plaintiffs' claims in Counts I, II, and III are based on federal law.  <u>See</u> 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United

States.").  The Court has federal question jurisdiction over Count I

because Count I presents a federal preemption claim.  See Shaw v. Delta

Air Lines, Inc., 463 U.S. 85, 96 n. 14, 103 S. Ct. 2890 (1983) ("A

plaintiff who seeks injunctive relief from state regulation, on the ground

that such regulation is preempted by a federal statute which, by virtue of

the Supremacy Clause, must prevail, thus presents a federal question

which the federal courts have jurisdiction under 28 U.S.C. § 1331 to

resolve."); see also Associated Builders & Contractors Saginaw Valley

Area Chapter v. Perry, 115 F.3d 386, 388-89 (6th Cir. 1997) (holding

that even though the plaintiff was not an ERISA entity, the court had

subject-matter jurisdiction to consider ERISA preemption issue because

plaintiff was seeking "injunctive and declaratory relief from state

regulation based on federal question jurisdiction").  Count II presents a

federal question because it seeks relief based on the Due Process Clause

of the Fourteenth Amendment.  Count III also presents a federal

question because it seeks relief based on the Privileges and Immunities

Clause and the Commerce Clause of the United States Constitution.

This Court has jurisdiction to hear Plaintiffs' remaining state law claims based on supplemental jurisdiction.  <u>See</u> 28 U.S.C. § 1367.

Venue is proper because Defendants reside in Sangamon County, Illinois.  <u>See</u> 28 U.S.C. § 1391(b)(1) (providing that a civil action may be brought in a judicial district where any defendant resides, if all defendants reside in the State in which the district is located).

## III.  LEGAL STANDARD

Summary judgment is appropriate when "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)).  The moving party must show that no reasonable fact finder could return a verdict for the nonmoving party.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252-54, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); <u>Gleason v. Mesirow Fin., Inc.</u>, 118 F.3d 1134, 1139 (7th Cir. 1997).  A

court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party.  See Trentadue v. Redmon, 619 F.3d 648, 652 (7th Cir. 2010).  "In order to successfully oppose a motion for summary judgment, the nonmoving party . . . must do more than raise a metaphysical doubt as to the material facts.  Rather, she must come forward with specific facts showing that there is a genuine issue for trial."  Gleason, 118 F.3d at 1139 (citing Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986)) (citations and internal quotation marks omitted).

# IV.  ANALYSIS

A.    Plaintiffs' Claims Against IDOT Are Barred by the Eleventh Amendment, but Plaintiffs' Claims Against IDOT Officials Survive Under Ex Parte Young

Initially, this Court addresses Defendants' argument that Plaintiffs' entire complaint is barred by the Eleventh Amendment.[6]

---

[6] This Court notes that the Seventh Circuit has indicated that sovereign immunity pursuant to the Eleventh Amendment is not "strictly" an issue of subject-matter jurisdiction.  See Ind. Prot. & Advocacy Servs., 603 F.3d at 370 ("The Eleventh Amendment is unusual in that it does not strictly involve subject[-]matter jurisdiction and is thus waivable.").  Nevertheless, this Court will address Eleventh Amendment immunity before proceeding to the question of whether the Court should abstain from exercising jurisdiction pursuant to Younger abstention.

The Eleventh Amendment "bars actions in federal court against a state, state agencies, or state officials acting in their official capacities." Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin., 603 F.3d 365, 370 (7th Cir. 2010) (citing Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 1355-56, 39 L. Ed. 2d 662 (1974)).  However, a state, state agency, or state official may be subject to suit in federal court where one of the following three exceptions apply: "(1) where Congress, acting under its constitutional authority conveyed by amendments passed after the Eleventh Amendment (the most common being the Fourteenth Amendment), abrogates a state's immunity from suit; (2) where the state itself consents to being sued in federal court; and (3) under the doctrine articulated by the Supreme Court in Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)."  Council 31 of the Am. Fed'n of State, Cnty. and Mun. Emps., AFL-CIO v. Quinn, 680 F.3d 875, 882 (7th Cir. 2012) (citing Ind. Prot. & Advocacy Servs., 603 F.3d at 371).

Here, Plaintiffs' suit against IDOT, an agency of the State of Illinois, is barred by the Eleventh Amendment.  IDOT has not consented

to suit, and Congress has not abrogated IDOT's immunity from suit.
Consequently, all claims against IDOT are dismissed.

Plaintiffs have also sued four IDOT officials in their official
capacities[7]: (1) Schneider, Secretary of IDOT; (2) Schanzle-Haskins,
Chief Counsel of IDOT; (3) Wetzler, Hearing Officer of IDOT; and (4)
Grunloh, Chief Procurement Officer of IDOT.  Because these defendants
are officials of the State of Illinois, the Eleventh Amendment bars suit
against them unless (1) Congress has abrogated immunity, (2) the State
has consented to suit, or (3) the Ex parte Young doctrine applies.  See
Council 31, 680 F.3d at 882.

Under the Ex parte Young doctrine, "a private party may sue
individual state officials in federal court to obtain prospective relief for an
ongoing violation of federal law."  MCI Telecomms. Corp. v. Ill. Bell Tel.

---

[7] While Plaintiffs have not explicitly stated that the IDOT officials are sued in their
official capacities, it is clear from the pleadings that these are official-capacity suits.  Plaintiffs
have alleged that the IDOT officials are engaged in (a) enforcing state law provisions that are
preempted by ERISA or are unconstitutional and (b) implementing IDOT's interim suspension
rules, which Plaintiffs allege violate due process.  Plaintiffs have not named any of the IDOT
officials in their individual capacities.  Plaintiffs have not alleged any specific, individual actions
of the state officials other than those actions related to enforcing or applying allegedly unlawful
state law provisions and administrative procedures.

Co., 222 F.3d 323, 345 (7th Cir. 2000) (citing Ex parte Young, 209 U.S.

at 159-60, 28 S. Ct. at 453-54); see also Alden v. Maine, 527 U.S. 706,

747, 119 S. Ct. 2240, 2263, 144 L. Ed. 2d 636 (1999); Seminole Tribe

of Fla. v. Florida, 517 U.S. 44, 73-74, 116 S. Ct. 1114, 1132 (1996);

Green v. Mansour, 474 U.S. 64, 68, 106 S. Ct. 423, 425-26, 88 L. Ed.

2d 371 (1985); Edelman, 415 U.S. at 663-68, 94 S. Ct. at 1355-56.[8]

"Ex parte Young applies to suits to enforce federal statutes as well as the

federal Constitution."  Ind. Prot. & Advocacy Servs., 603 F.3d at 371.

In such cases, "sovereign immunity does not apply because an

official who acts unconstitutionally is 'stripped of his official or

representative character.'"  Pennhurst State Sch. & Hosp. v. Halderman,

465 U.S. 89, 104, 104 S. Ct. 900, 910, 79 L. Ed. 2d 67 (1984) (quoting

Ex parte Young, 209 U.S. at 160, 28 S. Ct. at 454).  "[T]he Young

doctrine has been accepted as necessary to permit the federal courts to

vindicate federal rights and hold state officials responsible to 'the

supreme authority of the United States.'"  Id. at 105 (quoting Ex parte

---

[8] The Supreme Court recently clarified that a State or state agency may also sue under the Ex parte Young exception.  See Va. Office for Prot. & Advocacy, 131 S. Ct. 1632 (2011).

<u>Young</u>, 209 U.S. at 160, 28 S. Ct. at 454).  However, this principle does not extend to suits seeking retroactive relief from state officials, because "to do so would effectively eliminate the constitutional immunity of the States."  <u>Pennhurst</u>, 465 U.S. at 105, 104 S. Ct. at 910.

In order to determine whether the <u>Ex parte Young</u> exception allows Plaintiffs' suit against the IDOT officials, this Court must determine "'whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  <u>Ind. Prot. & Advocacy Servs.</u>, 603 F.3d at 371 (quoting <u>Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.</u>, 535 U.S. 635, 645, 122 S. Ct. 1753, 1760, 152 L. Ed. 2d 871 (2002)).

Here, Counts I, II, and III of the complaint allege ongoing violations of federal law.  Plaintiffs allege that the IDOT officials are engaged in enforcing a state statute, Section 30-22(6) of the Illinois Procurement Code (<u>see</u> 30 ILCS 500/30-22(6)), that is contrary to federal law because it is preempted by ERISA, 29 U.S.C. § 1144(a), a federal statute.  Plaintiffs also allege that IDOT officials enforce a state

statute, Section 30-22(8) of the Illinois Procurement Code (see 30 ILCS 500/30-22(8)), that violates the Privileges and Immunities Clause and Commerce Clause of the United States Constitution.  Finally, Plaintiffs also allege that the IDOT officials implement interim suspension proceedings that violate federal due process.  An allegation that a state official enforces a law in contravention of controlling federal law is sufficient to allege an ongoing violation of federal law for the purposes of Ex parte Young.  See Verizon Md., Inc., 535 U.S. at 645, 122 S. Ct. at 1760 (finding that a suit for injunctive relief seeking that state officials be restrained from enforcing an order in contravention of controlling federal law "clearly satisfie[d]" the Ex parte Young inquiry); Muscogee (Creek) Nation v. Pruitt, 669 F.3d 1159, 1168 (10 Cir. 2012) (finding that the plaintiff's claims that federal law preempted state statutes and that the statutes infringed on the plaintiff's tribal sovereignty were allegations of ongoing violations of federal law sufficient to allow suit against state officials under Ex parte Young).

 Count IV, however, is a state law claim that does not allege an

ongoing violation of federal law.  The Supreme Court has held that the

Ex parte Young exception does not apply to a suit against a state official

that is based on a violation of state law.  Pennhurst, 465 U.S. at 104-06,

104 S. Ct. 900, 910-11 (explaining that "when a plaintiff alleges that a

state official has violated state law . . . the entire basis for the doctrine of

Young and Edelman disappears).  Accordingly, Count IV is dismissed as

barred by the Eleventh Amendment.

As to the remaining claims, the Court also finds that Plaintiffs seek

relief that is "properly characterized as prospective."  Verizon Md., Inc.,

535 U.S. at 645, 122 S. Ct. at 1760.  Plaintiffs seek an injunction (1)

enjoining the IDOT officials from enforcing specific provisions of the

Illinois Procurement Code and from implementing certain administrative

rules regulating IDOT's suspension proceedings, and (2) prohibiting

IDOT officials from maintaining Chester Bross' interim suspension and

continuing suspension proceedings against Chester Bross.  Plaintiffs also

seek prospective declaratory relief.  Plaintiffs seek an order declaring: (1)

Section 30-22(6) of the Illinois Procurement Code is preempted by

ERISA; (2) Section 30-22(8) of the Illinois Procurement Code violates

the Privileges and Immunities Clause and Commerce Clause of the

United States Constitution and the Illinois Constitution; (3) IDOT's

amended suspension and interim suspension of Chester Bross are

unlawful; (4) IDOT's rules governing interim suspension are

unconstitutional as a violation of the Due Process Clause of the United

States Constitution and/or the Illinois Constitution; and (5) IDOT

exceeded its authority by requiring local units of government to comply

with the apprenticeship requirement of the Illinois Procurement Code.

Such injunctive and declaratory relief is prospective and permitted under

Ex parte Young.

However, Plaintiffs' request that this Court order IDOT to re-bid

the Piper Project seeks retroactive relief, as the bidding on the Piper

Project has already happened.  Such retroactive relief is not permitted

under the Ex parte Young exception and is barred by the Eleventh

Amendment.  See Va. Office for Prot. & Advocacy, 131 S. Ct. at 1646

("[T]he fiction of Ex parte Young does not extend to suits where the

plaintiff seeks retroactive relief." (citing <u>Edelman</u>, 415 U.S. at 678, 94 S.
Ct. at 1363)).

Defendants argue that Plaintiffs' suit against the IDOT officials
does not fall within the <u>Ex parte Young</u> exception and is barred by the
Eleventh Amendment.  Defendants assert that while the <u>Ex parte Young</u>
doctrine allows a plaintiff to seek an injunction compelling a state official
to refrain from violating federal law, "the doctrine does not apply 'when
the state is the real, substantial party in interest.'"  Defs.' Mem. Supp.
Summ. J. 8 (quoting <u>Va. Office for Prot. & Advocacy</u>, 131 S. Ct. at 1638
(2011)).  In the present case, Defendants contend, the State is the real
party in interest and, therefore, the <u>Ex parte Young</u> exception does not
apply.

This Court disagrees with Defendants' reading of <u>Virginia Office for
Protection and Advocacy</u>.  In that case, the Supreme Court explained
that the <u>Ex parte Young</u> doctrine serves as "an important limit on the
sovereign-immunity principle" and "rests on the premise . . . that when a
federal court commands a state official to do nothing more than refrain

from violating federal law, he is not the State for sovereign-immunity

purposes." 131 S. Ct. at 1638.  The Court then noted: "The doctrine is

limited to that precise situation, and does not apply 'when the state is the

real, substantial party in interest.'"  Id. (quoting Pennhurst, 465 U.S. at

101, 104 S. Ct. at 908) (internal quotation marks omitted).

The Supreme Court's discussion of Ex parte Young in Virginia

Office for Protection and Advocacy, quoted above, rests on its earlier

decision in Pennhurst, in which the Court stated the general principle

that the Eleventh Amendment "bars a suit against state officials when

'the state is the real, substantial party in interest.'"  465 U.S. at 101, 104

S. Ct. at 908 (quoting Ford Motor Co. v. Dep't of Treasury, 323 U.S.

459, 464, 65 S. Ct. 347, 350, 89 L. Ed. 389 (1945)).  However, the

Court then stated that the Ex parte Young doctrine provided an

exception to that general rule:

> The Court has recognized an important exception to this general
> rule: a suit challenging the constitutionality of a state official's
> action is not one against the State. This was the holding in Ex parte
> Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 2d 714 (1908), in
> which a federal court enjoined the Attorney General of the State of
> Minnesota from bringing suit to enforce a state statute that

allegedly violated the Fourteenth Amendment.  This Court held that the Eleventh Amendment did not prohibit issuance of this injunction.  The theory of the case was that an unconstitutional enactment is "void" and therefore does not "impart to [the officer] any immunity from responsibility to the supreme authority of the United States."  Id., at 160, 28 S. Ct., at 454.  Since the State could not authorize the action, the officer was "stripped of his official or representative character and [was] subjected to the consequences of his official conduct."  Ibid.

Pennhurst, 465 U.S. at 102, 104 S. Ct. at 909.  Both Pennhurst and

Virginia Office for Protection and Advocacy make clear the well-

established principle that the Ex parte Young doctrine provides an

exception to the general rule that a state, state agency, or state official

may not be sued "when the state is the real, substantial party in interest,"

and that exception is based on the "fiction" that a state official is not the

State for sovereign immunity purposes when the state official is violating

federal law.  See Pennhurst, 465 U.S. at 100, 105, 104 S. Ct. at 908,

910.

Accordingly, this Court finds that the Eleventh Amendment does

not bar Counts I, II, and III of Plaintiffs' suit against Defendants

Schneider, Schanzle-Haskins, Wetzler, and Grunloh because the claims

may be brought pursuant to the Ex parte Young exception to the

Eleventh Amendment.[9]

B.    This Court Abstains from Exercising Jurisdiction over this Case
      Based on Younger Abstention

As to the remaining claims against the IDOT officials, this Court

finds that abstention pursuant to Younger v. Harris, 401 U.S. 37, 91 S.

Ct. 746 (1971), is appropriate.  Under the Younger abstention doctrine,

a federal court is required to abstain from enjoining ongoing state

proceedings that are: "(1) judicial in nature, (2) implicate important state

interests, and (3) offer an adequate opportunity for review of

constitutional claims, (4) so long as no extraordinary circumstances—like

bias or harassment—exist which auger against abstention."  Majors v.

Engelbrecht, 149 F.3d 709, 711 (7th Cir. 1998) (citing Middlesex Cnty.

Ethics Comm. v. Garden State Bar Assoc., 457 U.S. 423, 429, 102 S. Ct.

---

[9] At the June 29, 2012 hearing on Defendants' Motion for Summary Judgment, Defendants briefly asserted that Wetzler and Grunloh are entitled to absolute immunity because their only involvement in the facts of this case was in a judicial capacity.  Defendants did not provide further argument or authority to support this contention at the hearing, and Defendants have not raised the absolute immunity defense in their Motion or Reply.  In any event, this Court need not address whether Wetzler and Grunloh are entitled to quasi-judicial immunity because this Court finds that Younger abstention is appropriate with respect to Plaintiffs' remaining claims, as discussed below.

2515, 73 L. Ed. 2d 116 (1982)).  The <u>Younger</u> doctrine "espouses a

strong federal policy against federal court interference with pending state

judicial proceedings absent extraordinary circumstances."  <u>Middlesex</u>,

457 U.S. at 431, 102 S. Ct. at 2521.  "The <u>Younger</u> principles of

abstention apply both to claims based on constitutional challenges, as

well as to those based on federal preemption challenges."  <u>FreeEats.com,</u>

<u>Inc. v. Indiana</u>, 502 F.3d 590, 595 (7th Cir. 2007) (citing <u>New Orleans</u>

<u>Pub. Serv., Inc. v. Council of City of New Orleans</u>, 491 U.S. 350, 365,

109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989)).

As to the first prong, Plaintiffs do not dispute that the pending

administrative proceedings before IDOT, in which the State has alleged

that Chester Bross violated state law, are "judicial in nature."  <u>See</u>

<u>Majors</u>, 149 F.3d at 712 ("For the purposes of <u>Younger</u> abstention,

administrative proceedings are 'judicial in nature' when they are

coercive—i.e. state enforcement proceedings, as opposed to remedial or

legislative." (citations omitted)); <u>Alleghany Corp. v. Haase</u>, 896 F.2d

1046, 1053 (7 Cir. 1990), <u>vacated on other grounds</u>, 499 U.S. 933

(1991) ("Whether the state proceeds against malefactors administratively or judicially is a distinction irrelevant to the policy behind <u>Younger</u>.").

The state proceedings are also ongoing.  To this Court's knowledge, the suspension proceedings before IDOT are still pending, and the Chief Procurement Officer has not yet issued a decision regarding the Hearing Officer's recommended decision.

Further, the state proceedings would be considered ongoing even if IDOT's Chief Procurement Officer were to issue a decision on Chester Bross' suspension before this Court's Opinion is entered, because Plaintiffs may seek review in state court.  The Seventh Circuit has held that an administrative proceeding and a subsequent state-court review proceeding are to be considered a single ongoing proceeding for the purposes of <u>Younger</u> abstention.  <u>See</u> <u>Majors</u>, 149 F.3d at 713.

In <u>Majors</u>, the Seventh Circuit addressed the issue of whether state proceedings were "ongoing" where the plaintiff filed a federal suit challenging a pending administrative proceeding, but, by the time the case was under consideration by the district court, the administrative

proceeding was over, and the plaintiff had not yet filed a review petition in state court.  149 F.3d at 713.  The court found that state proceedings were ongoing.  Id.  The court noted that, "[s]ince Huffman v. Pursue, Ltd.,  420 U.S. 592, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975), separate state trial and appellate review procedures are viewed as single ongoing proceedings" for purposes of Younger abstention, because "allowing what in effect would be a federal alternative to state appellate process would, besides disrupting and duplicating an ongoing proceeding, cast doubt on the ability of state appellate courts to oversee their trial courts."  Majors, 149 F.3d at 713 (citing Huffman, 420 U.S. at 598, 95 S. Ct. at 1200 (holding that state proceedings were ongoing where the plaintiff, after losing in state court, filed an action in federal court instead of seeking review in state appellate court)).  Applying Huffman, the court in Majors concluded that separate administrative and state-court review proceedings must also be viewed as single ongoing proceedings because the distinction between administrative and judicial proceedings is "a distinction without a difference."  Majors, 149 F.3d at 713 (citing Ohio

<u>State Civil Rights Comm'n v. Dayton Christian Sch., Inc.</u>, 477 U.S. 619,

627, 106 S. Ct. 2718, 91 L. Ed. 2d 512 (1986)).[10]  The court found that

the state proceedings were ongoing, even though the administrative

proceeding was over and even though no state-court review had been

initiated at the time the case was decided by the district court.  <u>Majors</u>,

149 F.3d at 713.

      Here, Plaintiffs may seek state-court judicial review after the Chief

Procurement Officer's decision is issued.  Therefore, this Court finds that

the state proceeding is ongoing, whether or not a final administrative

decision has been issued at this time.

_____

      [10] The First, Third, and Eighth circuits have also held that an administrative proceeding and subsequent state-court review are considered a single ongoing proceeding for the purposes of <u>Younger</u>.  <u>See</u>, <u>e.g.</u>, <u>Maymo-Melendez v. Alvarez-Ramirez</u>, 364 F.3d 27, 35 (1st Cir. 2004) ("<u>Younger</u> now has to be read as treating the state process [the administrative proceeding and the possibility for state-court review] . . . as a continuum from start to finish."); <u>O'Neill v. City of Philadelphia</u>, 32 F.3d 785, 790-91 (3d Cir.1994) ("We have been given no reason why a litigant in a state administrative proceeding should be permitted to forego state-court judicial review of the agency's decision in order to apply for relief in federal court."); <u>Hudson v. Campbell</u>, 663 F.3d 985, 988 (8th Cir. 2011) (citing <u>Alleghany Corp. v. McCartney</u>, 896 F.2d 1138, 1144 (8th Cir. 1990)) (finding the state proceedings were ongoing where the administrative proceeding was over but the plaintiff had not sought available state appellate remedies). This Court notes that the Fifth and Sixth Circuits have adopted the opposite view.  <u>See</u> <u>Thomas v. Tex. State Bd. of Med. Exam'rs</u>, 807 F.2d 453, 456 (5th Cir.1987) ("The mere availability of state judicial review of state administrative proceedings does not amount to the pendency of state judicial proceedings within the meaning of <u>Huffman</u>."); <u>Norfolk & W. Ry. Co. v. Pub. Utils. Comm'n</u>, 926 F.2d 567, 572 (6th Cir.1991) ("[A] state administrative enforcement proceeding is no longer pending when the agency proceeding has been completed, notwithstanding the availability of state appellate review.").

Second, Plaintiffs do not dispute that the state proceedings in this case implicate important state interests, which include the State's and the public's interest in the responsible letting of construction projects.

Plaintiffs argue that the third prong—whether the state proceedings offer an adequate opportunity for review of the federal claims—is not met. Plaintiffs contend that the IDOT proceedings do not provide adequate opportunity to raise their federal constitutional claims. This Court disagrees. For the purposes of Younger abstention, the opportunity for subsequent state-court review of an administrative proceeding is considered an adequate opportunity for review of federal claims. See Majors, 149 F.3d at 713 (finding that "[s]ubsequent judicial review is a sufficient opportunity" for review of federal claims); Ohio Civil Rights Comm'n, 477 U.S. at 629, 106 S. Ct. at 2724 ("[I]t is sufficient . . . that constitutional claims may be raised in state-court judicial review of the administrative proceeding."). Subsequent state-court review is also considered an adequate opportunity for review of federal preemption claims. See FreeEats.com, Inc., 502 F.3d at 600-01

(finding that Indiana courts offered adequate opportunity for review of the plaintiff's federal preemption and constitutional claims for the purposes of <u>Younger</u> abstention).  Therefore, under <u>Younger</u>, the fact that Plaintiffs may have a federal claim or defense does not permit Plaintiffs to seek a federal-court alternative to an ongoing state enforcement proceeding: "'[I]f a person is believed to have violated a state law, the state has instituted a criminal disciplinary or other enforcement proceeding against him, and he has a federal defense, he cannot scurry to federal court and plead that defense as a basis for enjoining the state proceeding.'"  <u>Forty One News, Inc.</u>, 491 F.3d at 665 (quoting <u>Nader v. Keith</u>, 385 F.3d 729, 732 (7th Cir. 2004)).  Here, the state proceedings offer Plaintiffs an adequate opportunity to pursue their federal claims because Plaintiffs may seek judicial review in state court.

Plaintiffs contend that the opportunity for review in state court is not adequate in this case because the only opportunity for review is through a petition for common law writ of certiorari, which is a form of limited review.  Plaintiffs cite <u>Grandco Corp. v. Rochford</u>, 536 F.2d 197

(7th Cir. 1976) in support, but that case is distinguishable.

In <u>Grandco</u>, three operators of movie theaters brought a Section 1983 suit in federal court, alleging First Amendment violations, after the City of Chicago denied them municipal public place of amusement licenses and then initiated city proceedings against them for operating without a license.  <u>Id.</u> at 200.  One of the plaintiffs, Festival Theatre Corporation ("Festival Theatre"), was denied a license but actually operated theaters under a license issued to a third party.  <u>Id.</u> at 201.  The City had initiated proceedings to revoke the license under which Festival Theatre operated, but the proceeding was against the third party and not Festival Theatre.  <u>Id.</u>  In the federal suit, all three plaintiffs challenged a municipal ordinance providing that the mayor could grant licenses to persons upon a showing that they are "fit and proper persons."  <u>Id.</u> at 201.  The defendants argued for dismissal based on <u>Younger</u> abstention. <u>Id.</u>

The Seventh Circuit held that <u>Younger</u> abstention was appropriate as to the first two plaintiffs but not as to Festival Theatre, because "the

nature of the administrative proceedings and the limitations on judicial

review of those proceedings militate[d] against" abstention.  Id. at 206.

Specifically, the court noted that the state proceedings governing the

issuance of licenses, wherein the mayor made a determination following a

hearing before his appointee, "[we]re not before a court or any

established adjudicatory body."  Id.  Further, the court considered that

state-court review of the mayor's decision was available only by common-

law certiorari, "a limited review on the record."  Id.  Finally, the court

noted that Festival Theatre, unlike the other plaintiffs, was not operating

in violation of the challenged ordinance and was not a party to the

proceeding to revoke the license under which it operated since that

license was held by a third party.  Id. at 206.  Therefore, granting Festival

Theatre's request for federal relief would not disrupt pending state

enforcement proceedings in which its constitutional claims could be

raised or vindicated, and Younger abstention was not proper.  Id. at 207.

The present case differs from Grandco because Chester Bross,

unlike Festival Theatre in Grandco, is the target of a challenged state

Page 35 of  38

enforcement proceeding.  Additionally, the proceedings before IDOT,

unlike the proceeding in Grandco, are before an "established adjudicatory

body."  Id. at 206.

Further, the Seventh Circuit has held that the opportunity for state-

court judicial review, even where that review is discretionary, provides

sufficient opportunity to raise federal claims for the purposes of Younger.

See Majors, 149 F.3d at 713 (finding that review of constitutional claims

by way of a petition to the state court constituted "subsequent judicial

review" and was sufficient opportunity to raise federal claims for the

purposes of Younger); see also Canatella v. California, 404 F.3d 1106,

1111 (9th Cir. 2005) (finding the plaintiff had adequate opportunity for

review of federal claims even where such judicial review was "wholly

discretionary"); Fieger v. Thomas, 74 F.3d 740, 746-49 (6th Cir. 1996)

(applying Younger abstention where the plaintiff could raise

constitutional issues in the administrative proceeding and, by filing a

petition for discretionary review, in state supreme court).

As to the fourth and final requirement, Plaintiffs have not alleged

any extraordinary circumstances, such as bias or harassment, that would make abstention inappropriate in this case.  See Majors, 149 F.3d at 711.

Accordingly, this Court finds that all of the requirements for Younger abstention are satisfied.  The Court finds that abstention is appropriate to address the principles of equity, comity, and federalism. See Ohio Civil Rights Comm'n, 477 U.S. at 627, 106 S. Ct. at 2722; Mitchum v. Foster, 407 U.S. 225, 243, 92 S. Ct. 2151, 2162, 32 L. Ed. 2d 705 (1972) ("[T]he principles of equity, comity, and federalism . . . must restrain a federal court when asked to enjoin a state court proceeding.").

Because this Court finds that Younger abstention is appropriate on all counts of the complaint, the remaining arguments stated in Defendants' Motion are denied as moot.

## V. CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment (d/e 10) is GRANTED in part and DENIED in part.  Plaintiffs' complaint is DISMISSED in its entirety, without prejudice.  The

remainder of Defendants' Motion is DENIED AS MOOT.  This case is

CLOSED.

IT IS SO ORDERED.

ENTER: August 10, 2012

FOR THE COURT:

_____s/ Sue E. Myerscough_____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
